```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                      HOUSTON DIVISION

DARRYL GORMAN,                    §
                                  §
       Plaintiff,                 §
                                  §
v.                                §       CIVIL NO. H-03-3950
                                  §
KEITH BELL,                       §
                                  §
       Defendant.                 §
```

## MEMORANDUM OPINION

Pending before the court is K. P. Bell's Second Motion for Summary Judgment (Docket Entry No. 75) and the response filed thereto. The court has considered the motion, all relevant filings, and the applicable law. For the reasons set forth below, the motion is **GRANTED.**

### I.  Case Background

On October 21, 2001, Plaintiff and three friends went to the parking lot of a reception hall where a party was being held. Houston Police Officers K. P. Bell ("Officer Bell") and Hollis Felder ("Officer Felder"), along with security guard Edward Felder ("Security Guard Felder"), were present in the parking lot providing security for the event that evening.

After Officer Felder told two of Plaintiff's friends to either go into the reception hall or leave the parking lot, words were exchanged between the officer and one of Plaintiff's friends, Jerry Bell ("Bell"). These words were followed by taunts, which in turn were followed by physical blows between Bell and Officer Felder.

When Plaintiff attempted to interject himself into the fight, Officer Bell told him to stay back and used his nightstick and other arm to block Plaintiff from approaching the fight. Plaintiff struggled with Officer Bell and eventually was able to push the nightstick away and run toward the fight.

After the fight was stopped by Security Guard Felder and Bell was in custody, Plaintiff started to approach Officer Felder. Officer Felder warned Plaintiff not to get any closer, Plaintiff failed to obey, and was shot twice by Officer Felder.[1] Plaintiff was taken to hospital for treatment of the gunshot wounds. The Homicide Division was called to the scene to investigate the incident.

When Plaintiff awoke from surgery, he found himself handcuffed to the hospital bed, under arrest for attempting to take a weapon, specifically a nightstick, from Officer Bell with the intention of harming Officer Bell.[2] The complaint was signed by Assistant District Attorney ("ADA") K. A. Braddock and Esmerelda Ortiz, affiant. Bond was posted several days later and Plaintiff was discharged from the hospital.

On January 18, 2002, Plaintiff was indicted on the same

---

[1]A jury found that Officer Felder did not use excessive force when he shot Plaintiff and that Officer Felder did not commit state law assault on Plaintiff. See Jury Instructions, Docket Entry No. 73, pp. 10, 13. Accordingly, the court does not discuss that aspect of the case.

[2]See K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. R, "Criminal Complaint."

charge.[3]  This charge was later dismissed because the prosecutor did not believe he could prove the intent element of the offense because, after Plaintiff and Officer Bell struggled for control of the nightstick, Plaintiff let go of the nightstick and ran towards the fight.[4]

Claiming that Officer Bell provided false testimony in the affidavit supporting the criminal complaint, Plaintiff brought the present suit for violation of his Fourth Amendment right to be free from false arrest.  After the evidence closed, it was discovered that Ortiz, and not Officer Bell, had signed the criminal complaint.  Plaintiff refused to dismiss the action against Officer Bell and asked for additional time to consider the evidence.  The court entered a mistrial and set a briefing schedule.  Presently before the court is Officer Bell's second motion for summary judgment.

## II.  Legal Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists regarding any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Brown v. City of Houston, Tex., 337 F.3d 539, 540-41 (5th Cir.

---

[3]See K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. R, "Indictment."

[4]See K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. 5, "Affidavit of Monroe Giese."

2003).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  <u>Id</u>. at 250.

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  <u>Celotex Corp.</u>, 477 U.S. at 323; <u>Topalian v. Ehrman</u>, 954 F.2d 1125, 1131 (5th Cir. 1992).  If the moving party can show an absence of record evidence in support of one or more elements of the case for which the nonmoving party bears the burden, the movant will be entitled to summary judgment.  <u>Celotex Corp.</u>, 477 U.S. at 322.  In response to a showing of lack of evidence, the party opposing summary judgment must go beyond the pleadings and proffer evidence that establishes each of the challenged elements of the case, demonstrating that genuine issues of material fact do exist which must be resolved at trial.  <u>Id.</u> at 324.

When considering the evidence, "[d]oubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party."  <u>Evans v. City of Houston</u>, 246 F.3d 344, 348 (5th Cir. 2001); <u>see also</u> <u>Boston Old Colony Ins. Co.</u>

v. Tiner Assocs. Inc., 288 F.3d 222, 227 (5th Cir. 2002). The court should not "weigh evidence, assess credibility, or determine the most reasonable inference to be drawn from the evidence." Honore v. Douglas, 833 F.2d 565, 567 (5th Cir. 1987).

### III.  Analysis

Plaintiff alleges that Officer Bell is liable under 42 U.S.C. § 1983 for violation of Plaintiff's Fourth Amendment right to be free from false arrest. Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

A plaintiff can establish a prima facie case under Section 1983 by alleging 1) a violation of a federal constitutional or statutory right; and 2) that the violation was committed by an individual acting under the color of state law. Doe v. Rains County Indep. Sch. Dist., 66 F.3d 1402, 1406 (5th Cir. 1995). The statute creates no substantive right, but only provides remedies for deprivations of rights created under federal law. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

Defendant Officer Bell concedes that he was acting under color of state law on October 21, 2001. He argues that he did not violate Plaintiff's Fourth Amendment right to be free from false arrest. Alternatively, he argues that he is entitled to qualified

immunity for his actions.

In order to meet his burden of proof, Plaintiff must demonstrate that a genuine issue of material fact exists as to whether Officer Bell knowingly provided false information to secure an arrest warrant or gave false information in reckless disregard of the truth.  See Freeman v. County of Bexar, 210 F.3d 550, 553 (5th Cir. 2000)(citing Franks v. Delaware, 438 U.S. 154, 171 (1978)).  Allegations that false information was provided negligently or by innocent mistake are insufficient to state a claim for false arrest.  Franks, 438 U.S. at 171.

Causation is an element of a Section 1983 claim; Officer Bell's actions must have actually caused the deprivation of the Fourth Amendment right or his actions must have been causally connected to the constitutional violation.  Roberts v. City of Shreveport, 397 F.3d 287, 292 (5th Cir. 2005)(citing Woods v. Edwards, 51 F.3d 577, 583 (5th Cir. 1995)).

If Plaintiff can meet this burden, then he must overcome Officer Bell's assertion of qualified immunity by demonstrating a fact issue as to whether any reasonably competent officer possessing the information that Officer Bell had at the time, could have concluded that the information he gave to investigators was true.  Even if officers of reasonable competence could disagree on this issue, Officer Bell is still entitled to qualified immunity. Freeman, 210 F.3d at 553-54, (citing Malley v. Briggs, 475 U.S.

335, 341 (1986).

In support of his motion, Officer Bell averred that after the shooting, he spoke to Houston Police Department Homicide Division investigators and an ADA at the scene.[5]  Bell stated that he told the ADA that Plaintiff had attempted to intervene in the fight between Officer Felder and Bell.  Officer Bell told the ADA that he told Plaintiff to stay back and had placed his nightstick in front of Plaintiff and his other arm in back of Plaintiff in an attempt to prevent Plaintiff from interfering in the fight.[6]  Plaintiff did not obey Officer Bell but continued to push forward to get to the fight.

According to Officer Bell, Plaintiff was screaming profanities and other unintelligible remarks at the combatants while Officer Bell was trying to hold Plaintiff back.[7]  Officer Bell told investigators that Plaintiff grabbed the officer's nightstick and began to struggle for control of it.  Officer Bell lost his balance in keeping possession of the nightstick and Plaintiff was able to run towards the fight.[8]

In addition to his oral statements to investigators, Officer Bell provided a sworn statement to homicide investigators within

---

[5]   K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. E, "Affidavit of Keith Bell."

[6]   Id.

[7]   Id.

[8]   Id.

hours of the shooting.[9]  Relevant to the present dispute, Bell averred:

> I attempted to assist Officer Felder, at which time, one of the other males intervened in the matter and also attempted to attack Felder.  I began struggling with the second male.  It seemed like we struggled for several minutes.  I noticed the security guard (E. Felder, who is the brother of Officer Felder) come running and began (sic) assisting Officer Felder.
>
> I had my baton out, in an effort to keep him away.  I never struck him with the baton.  He grabbed my baton and attempted to take it away from me.  He was pulling it away from me, but I held strong and he was not successful.[10]

A police report generated after the shooting is consistent with Bell's sworn and unsworn statements.  The report stated in pertinent part, "A second suspect, Mr. Gorman, attempted to get involved on the confrontation between Suspect Bell and Officer Felder, however Officer Bell restrained Suspect Gorman. . . . As Officer Felder began to regain control after the altercation with Suspect Bell, Suspect Gorman managed to get free from Officer Bell and approached Officer Felder."[11]

The summary judgment evidence established that the decision to charge Plaintiff was made by a prosecutor in the Harris County District Attorney's Intake Division based on an information

---

[9]  K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. F, "Witness Statement of Keith Bell."

[10]  Id.

[11]  K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. L, p. 8 (unnumbered).

worksheet completed by a law enforcement officer other than Officer Bell.  That prosecutor, ADA Braddock, spoke with a law enforcement officer at the scene of the shooting to determine if there were facts to justify the filing of criminal charges against Plaintiff.[12] ADA Braddock authorized an officer in the field to prepare and transmit to her a District Attorney Intake Management System worksheet.  That worksheet included identifiers for the person to be charged and a brief summary of the facts establishing probable cause.[13]  After ADA Braddock received the worksheet, she reviewed the probable cause statement for sufficiency of the evidence and forwarded the worksheet to an administrative assistant for preparation of the criminal complaint.

Esmerelda Ortiz, an administrative assistant in the Harris County District Attorney's Office, averred that she was the affiant on the criminal complaint filed against Plaintiff.  Ortiz stated that she drafted the complaint solely from information contained in the District Attorney Intake Management System.[14]  She did not discuss the incident with Officer Bell in the course of preparing the criminal complaint.[15]

---

[12] K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. 8, "Affidavit of Kathy Braddock."

[13] Id.

[14] K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. 4, Affidavit of Esmerelda Ortiz.

[15] Id.

In his supplemental affidavit, Officer Bell stated that he did not speak to any person at the Harris County District Attorney's Office concerning the filing of charges against Plaintiff.[16] In fact, Officer Bell stated that he was not told that homicide investigators had made a decision to bring charges against Plaintiff.[17]

In response to Officer Bell's motion for summary judgment, Plaintiff submits his deposition testimony, his post-trial affidavit, portions of Officers Bell and Felder's depositions,[18] a contract with the lawyer hired to represent him on the criminal charge, and evidence which is subject to a protective order that need not be mentioned herein.

The evidence submitted by Plaintiff demonstrated that there are factual disputes between Officer Bell and Plaintiff concerning where the altercation took place and the amount of force used by Plaintiff when he touched Officer Bell's nightstick. Most notably, Plaintiff contended that he did not try to take the nightstick away from the officer but that his hands "brush[ed]" the officer's nightstick as he moved toward the fight.[19]

---

[16]   K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, "Supplemental Affidavit of Keith Bell."

[17]   Id.

[18]   The gist of the portions of the depositions was that Plaintiff did not strike Officer Bell, Officer Felder or Security Guard Felder.

[19]   Plaintiff Gorman's Opposition to Defendant Keith Bell's Second Motion for Summary Judgment, (Docket Entry No. 83), Ex. B, p. 1.

Plaintiff's evidence does not show that Officer Bell's statements were false, and other than Plaintiff's own self-serving version of the event, there is nothing to suggest that Officer Bell's rendition was not as he perceived it to be. Officer Bell has never retracted or materially altered his statement of his encounter with Plaintiff to this date. More importantly, Plaintiff's summary judgment evidence fails to show any connection between a statement made by Officer Bell, that he knew to be false, and the preparation of the criminal complaint.

Plaintiff does not submit the district attorney's worksheet from which the complaint was prepared. Without that document, the court can make no determination on what information the complaint was based, who provided that information and if Officer Bell was a source of information, if that information was correctly reported to the ADA.[20] Officer Bell cannot be held personally liable for false arrest based on speculation or the law enforcement equivalent of the telephone game.

The court has reviewed all the record evidence and finds that there is no evidence to suggest that Officer Bell was involved in the decision to charge Plaintiff with a criminal offense or the

---

[20] The court notes that Officer Bell was not the only possible witness to the incident between himself and Plaintiff. ADA Monroe Giese stated in his affidavit that there were other witnesses who corroborated Officer Bell's version that Plaintiff had taken hold of the nightstick and attempted to take it away from Officer Bell. See K.P. Bell's Second Motion for Summary Judgment, Docket Entry No. 75, Ex. 5, Affidavit of Monroe Giese.

preparation of the criminal complaint.  Officer Bell did not arrest Plaintiff and did not sign the criminal complaint.  Plaintiff has not come forward with any evidence that raises a fact issue that Officer Bell gave false information for the purpose of securing an arrest warrant, the first Franks factor, or that any false information, recklessly provided by Officer Bell, found its way onto the district attorney's worksheet, the second Franks factor.  Because the court finds that Plaintiff cannot prove a constitutional violation was committed by Officer Bell, it does not reach the issue of qualified immunity.

## IV.  Conclusion

In light of the foregoing, Defendant's Second Motion for Summary Judgment (Docket Entry No. 75) is **GRANTED.**

SIGNED this 2nd day of June, 2006, in Houston, Texas.

Nancy K. Johnson
United States Magistrate Judge